UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X
:
PIRS CAPITAL, LLC,                                        :          23 Civ. 10343 (AT) (GS)
                                                         :
                                   Petitioner,           :          REPORT &
                                                         :          <u>RECOMMENDATION</u>
                        - against -                      :
                                                         :
DERRICK CHEN, also known as                              :
DERRICK RUN LONG CHEN,                                   :
                                                         :
                                   Respondent.           :
--------------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

Petitioner Pirs Capital, LLC ("Pirs Capital") initiated this action in New York

state court to confirm an arbitration award rendered in its favor.  Respondent

Derrick Chen ("Chen") removed the action to this Court.  Pirs Capital now moves to

remand the action back to state court.  (Dkt. No. 13).  For the reasons set forth

below, the undersigned respectfully recommends that Pirs Capital's motion be

**GRANTED**.[1]

## BACKGROUND

### A.    The Merchant Agreement and Guaranty

The underlying dispute between the parties arises from a Merchant

Agreement dated October 17, 2022 between Pirs Capital and non-party Cenports

Commerce Inc. ("Cenports") setting forth the terms of a merchant cash advance

---

[1] On February 13, 2024, the Honorable Analisa Torres referred Pirs Capital's motion to remand to
the undersigned for a Report & Recommendation.  (Dkt. No. 17).

transaction ("Merchant Agreement").  (Dkt. No. 13-1).[2]  Under the Merchant

Agreement, Pirs Capital agreed to purchase, for $505,000, a specified percentage of

future receivables of Cenports up to the amount of $600,950.  (*Id*. §§ 1.1, 1.2).

Cenports agreed to deposit its future receivables into a bank account approved by

Pirs Capital and authorized Pirs Capital to withdraw the specified percentage of the

receivables every weekday.  (*Id*. §§ 1.2, 1.4).[3]  Chen executed the Merchant

Agreement both on behalf of Cenports and individually as its owner.  (*Id*. at 9).

There are three separate agreements appended to the Merchant Agreement,

all of which were entered into the same day, October 17, 2022.  The first is a

Security Agreement and Guaranty that secured Cenports' obligations under the

Merchant Agreement in two ways.  (Dkt. No. 13-1 at 10–12).  First, Cenports

granted Pirs Capital a security interest in certain accounts and proceeds.  (*Id*. at

10).  Second, Chen personally "guarantee[d]" Cenports' performance of "all the

representations, warranties, [and] covenants" made by Cenports in the Merchant

Agreement and the Security Agreement (the "Guaranty").  (*Id*. at 11).  Under the

Guaranty, in the event Cenports failed to make a payment or perform any

obligation when due under the Merchant Agreement, Pirs Capital was entitled to

enforce its rights against Chen as guarantor without first seeking payment from

---

[2] Both parties submitted identical copies of the Merchant Agreement.  (*See* Dkt. Nos. 13-1, 14-2).  For ease of reference, the Court refers only to the copy of the agreement attached to Pirs Capital's moving brief.  (Dkt. No. 13-1).

[3] On October 19, 2022, several days after the Merchant Agreement was executed, the parties executed a Weekly Payment Addendum, whereby Pirs Capital agreed to withdraw an accrued specified amount once per week.  (Dkt. No. 13-1 at 19; *see also* Respondent's Answer and Affirmative Defenses to Arbitration Statement with Counterclaims (Dkt. No. 14-1) ¶¶ 24(a), 28).

Cenports.  (*Id*.).  Chen also executed this agreement on behalf of Cenports and individually as the owner of Cenports.  (*Id*. at 12).

The second attachment to the Merchant Agreement is an agreement authorizing Pirs Capital to make debit or credit entries from or to Cenports' bank account until the sooner of Pirs Capital's obtaining $600,950 or Cenports' revoking the agreement with Pirs Capital's permission.  (Dkt. No. 13-1 at 13–14).  The third attachment is an agreement entitled "Optional Variable Purchase Program" that authorizes Pirs Capital to initiate payments from the account until it has received an amount equal to $600,950, in lieu of debiting the specified percentage of future receivables from Cenports' bank account.  (Dkt. No. 13-1 at 15–18).

Both the Merchant Agreement and the Guaranty contain choice-of-law and forum selection provisions selecting New York law and, at Pirs Capital's election, a New York state court forum.  Section 4.5 of the Merchant Agreement provides, in relevant part:

> **Binding Effect: Governing Law, Venue, and Jurisdiction**. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regards to any applicable principals [*sic*] of conflicts of law. ***Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if Purchaser [(Pirs Capital)] so elects, be instituted in the Supreme Court of the State of New York, County of New York (the "Acceptable Forum")***. Merchant [(Cenports)] agrees that the Acceptable Forum are [*sic*] convenient to it, and submits to the jurisdiction of the Acceptable Forum and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant waives any right to oppose any motion or application made by Purchaser to transfer such proceeding to an Acceptable Forum.

(Dkt. No. 13-1 § 4.5 (emphasis added)).

3

The same provision is repeated nearly verbatim in the Guaranty:

> **Governing Law, Venue, Jurisdiction, and Service of Process.**
> This Guaranty shall be governed by and construed in accordance with
> the laws of the State of New York, without regards to any applicable
> principals [*sic*] of conflicts of law. Any suit, action or proceeding arising
> hereunder, or the interpretation, performance or breach hereof, shall,
> if Purchaser [(Pirs Capital)] so elects, be instituted in the Acceptable
> Forum [(defined in Section 4.5 of the Merchant Agreement as the
> Supreme Court of the State of New York, County of New York)].
> Owner/Guarantor [(Chen)] agrees that the Acceptable Forum is
> convenient to Owner, and submits to the jurisdiction of the Acceptable
> Forum and waives any and all objections to jurisdiction or venue.
> Should such proceeding be initiated in any other forum, Owner waives
> any right to oppose any motion or application made by Purchaser to
> transfer such proceeding to an Acceptable Forum.

(*Id.* at 11–12).

Further, Section 4.12 of the Merchant Agreement includes an arbitration
clause allowing either Pirs Capital or Cenports to elect to resolve any dispute
relating to the Agreement by means of binding arbitration. (Dkt. No. 13-1
§ 4.12(a)). Section 4.12 provides for the arbitration to be administered by Mediation
and Civil Arbitration, Inc. d/b/a Rapid Ruling ("Rapid Ruling"), based in
Manhattan, and requires the arbitrator to apply the substantive law of New York.
(*Id.* § 4.12(g)). It further provides that "[i]f a third party is also involved in" the
dispute giving rise to the arbitration, then the dispute "will be decided with respect
to the third party in arbitration as well." (*Id.* § 4.12(f)).

Lastly, and of greatest relevance here, Section 4.12(j) of the Merchant
Agreement specifies the New York Supreme Court for New York County ("New
York County Supreme Court") as the forum to confirm an arbitration award:

> The proceeding to confirm the award rendered by the Arbitrator(s)
> shall be brought before a court in the Acceptable Forum, and

4

Judgment on the award rendered by the Arbitrator(s) shall be entered by a court in the Acceptable Forum.

(*Id.* § 4.12(j)).  As noted above, Section 4.5 of the Merchant Agreement defines "Acceptable Forum" as the New York County Supreme Court.

## B.    The Arbitration

On April 26, 2023, Pirs Capital sued Chen in New York County Supreme Court under the Guaranty, claiming that Cenports had defaulted on its obligations under the Merchant Agreement.  Complaint, *Pirs Capital, LLC v. Chen*, Index No. 652046/2023 (Sup. Ct. N.Y. Cnty. Apr. 26, 2023), Dkt. No. 1.  The day before, Cenports had filed for bankruptcy protection in the Northern District of California. *In re Cenports Commerce Inc.*, Petition No. 23-40478 (Bankr. N.D. Cal. Apr. 25, 2023).

Chen, who at the time was represented by counsel, removed Pirs Capital's suit to this Court on May 15, 2023 based on diversity of citizenship.  Notice of Removal, *Pirs Capital v. Chen*, No. 23 Civ. 4021 (LLS), Dkt. No. 1.  On June 1, 2023, after Chen sought a conference to make a motion to transfer venue to the Northern District of California (*id.*, Dkt. No. 3), Pirs Capital voluntarily dismissed the action without prejudice, having evidently decided to invoke its right under Section 4.12 of the Merchant Agreement to proceed by means of arbitration instead (*id.*, Dkt. No. 4).

On or around June 20, 2023, Pirs Capital initiated an arbitration proceeding against Chen before Rapid Ruling in New York.  (*See* Final Arbitration Award ("Award") (Dkt. No. 13-2) ¶ 9).  Pirs Capital asserted that Cenports breached the

Merchant Agreement by (i) entering into additional cash advance transactions with other entities in violation of an "anti-stacking" provision therein; and (ii) failing to provide the funds necessary for required debt payments or, alternatively, making other arrangements or requesting reconciliation. (Award ¶¶ 5–6). Pirs Capital sought $213,989 in damages, an amount comprised of Cenports' outstanding balance of $158,389.65 plus attorneys' fees and interest, as well as the costs of arbitration. (*Id.* ¶ 7).

In response to Pirs Capital's arbitration demand, Chen presented a series of defenses, including, *inter alia*, that the Merchant Agreement "is not actually a sale but rather a disguised loan and as such [is] criminally usurious and unenforceable." (*Id.* ¶ 11(a)). Chen also asserted counterclaims alleging Pirs Capital committed fraud and criminal usury that caused Cenports' bankruptcy. (Respondent's Answer and Affirmative Defenses to Arbitration Statement with Counterclaims (Dkt. No. 14-1) ¶¶ 41–47). Chen sought a declaratory judgment that the Merchant Agreement was void *ab initio* and an award of attorneys' fees and expenses. (*Id.* ¶¶ 42–44).

On October 2, 2023, an evidentiary hearing was held before arbitrator Ira David, Esq. (Award ¶ 9). At the hearing, Pirs Capital's COO testified and Chen, who appeared *pro se*, presented his arguments and defenses. (*Id.* ¶¶ 9–11). Two days later, on October 4, 2023, the arbitrator issued his Award, ruling in favor of Pir's Capital and awarding it $212,506, "representing the sum of the acceleration of

the balance owed under the [Merchant] Agreement ($158,389.65), legal fees as adjusted ($46,396.00), and the costs of arbitration ($7,245.00)." (*Id*. at 10–11).

On the usury issue, the arbitrator applied New York law and rejected Chen's arguments, concluding, *inter alia*, that the Merchant Agreement "was decidedly a contract for the purchase and sale of future receivables" rather than a loan, "precluding and/or rendering meritless [Chen's] usury defenses." (*Id*. ¶ 12(i)). The arbitrator reasoned, *inter alia*, that: (i) the Optional Variable Purchase Program agreement appended to the Merchant Agreement establishes a reconciliation provision, creating an inference the agreement is a purchase of future receivables, not a loan (*id*. ¶ 12(c)); (ii) the Merchant Agreement unambiguously establishes an indefinite term, rather than repayment in-full on a date certain, creating the same inference it is a purchase of future receivables, not a loan (*id*. ¶12(d)); (iii) since Cenports' failure to make sales was not an event of default, Pirs Capital bore the risk of non-payment in the event of a downturn in Cenports' business (*id*. ¶ 12(f)); and (iv) Chen's obligations under the Guaranty were only triggered upon conduct beyond the purview of money lending, namely, Cenports' violation of the anti-stacking provision (*id*. ¶ 12(g)).

### B.    The Instant Action

Pirs Capital initiated this action to confirm the arbitration award of $212,506 with the filing of a Verified Petition and a proposed Order to Show Cause on October 21, 2023 in New York County Supreme Court. (Dkt. No. 1 ¶ 3 & Exs. 1-2). On November 22, 2023, Chen, proceeding *pro se*, removed the action to this Court on the basis of diversity jurisdiction. (*Id*. ¶ 1). Chen avers that Pirs Capital, a

limited liability company, is organized under the laws of Florida, that its principal place of business is in Florida, and that its members are located in Florida. (*Id.* ¶ 12; Dkt. Nos. 5, 7). Chen states that he resides in San Francisco, California. (Dkt. No. 1 ¶ 13).

With leave of Court (*see* Dkt. No. 11), Pirs Capital submitted its instant letter-motion to remand this action to New York County Supreme Court on January 19, 2024. (Dkt. No. 13 ("Pet. Br.")). Relying on the forum selection provisions in the Merchant Agreement, and in particular Section 4.12(j)'s designation of New York County Supreme Court as the agreed-upon forum for a proceeding to confirm an arbitration award, Pirs Capital argues that the only proper forum for this action is New York County Supreme Court and therefore this Court lacks jurisdiction over the parties' dispute. (*See id.*).

On February 5, 2024 Chen submitted his opposition to Pirs Capital's motion (Dkt. No. 14 ("Resp. Br.")) and a supporting declaration (Dkt. No. 15). Echoing the arguments he made in arbitration, Chen asserts that the Merchant Agreement constitutes a usurious loan and therefore the entire agreement, including the forum selection provisions, is void and unenforceable under New York law. (Resp Br. at 5–8). Chen argues, in the alternative, that he should be allowed to fully brief and conduct limited discovery on the usury issue before the Court decides whether it should enforce the forum selection provisions. (*Id.* at 8–9).

On February 12, 2024, Pirs Capital submitted its reply. (Dkt. No. 16 ("Reply")). Therein, Pirs Capital primarily argues that Chen should be collaterally

estopped from making his usury argument, as he already made that argument during the arbitration proceedings and the arbitrator rejected it. (*Id*. at 2). Pirs Capital also argues that Chen has failed to present any reason why the parties' forum selection provisions should not be enforced. (*Id*. at 2–3).

## LEGAL STANDARDS

An action filed in state court may be removed by a defendant if "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Among other things, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." *Id*. § 1332(a)(1). *See Speedfit LLC v. Woodway*, 642 F. Supp. 3d 429, 436 (S.D.N.Y. 2022).

"'Once a case has been removed to federal court, a party may move to remand the case to state court.'" *Pumpkin Inv., LLC v. XL Ins. Am., Inc.*, No. 24 Civ. 1024 (PAE), 2024 WL 3238049, at *2 (S.D.N.Y. June 27, 2024) (quoting *Shapiro v. Logistec USA, Inc.*, 412 F.3d 307, 310 (2d Cir. 2005)). "On a motion to remand, the removing defendant 'has the burden of establishing that removal was proper.'" *Id*. (quoting *Tantaros v. Fox News Channel, LLC*, 427 F. Supp. 3d 488, 493 (S.D.N.Y. 2019)). "'[O]ut of respect for the limited jurisdiction of the federal courts and the rights of states,' . . . removal jurisdiction must be 'strictly construed' and any doubts should be resolved against removability." *Speedfit*, 642 F. Supp. 3d at 437 (quoting *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) and *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002)).

"Parties are free to bind themselves to forum selection clauses that trump what would otherwise be a right to remove cases to federal courts." *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 76 (2d Cir. 2009). "To the extent that a forum selection clause binds diverse parties by its express terms to a specific jurisdiction that is not federal, it waives a statutory right to remove." *Id.*; *see also Karl Koch Erecting Co. v. N.Y. Convention Ctr. Dev. Corp.*, 838 F.2d 656, 659 (2d Cir. 1988) (construing forum selection clause requiring proceeding to be commenced in New York state court to preclude removal to federal court); *Law Offices of Aleksandr Vakarev v. Cuneo, Gilbert & LaDuca, LLP*, No. 21 Civ. 2942 (FB) (JRC), 2022 WL 3030444, at *1 (E.D.N.Y. Aug. 1, 2022) ("In the Second Circuit, forum selection clauses that require actions to be commenced in state court rather than federal court are enforced.").

Courts in this Circuit employ a "four-part framework when determining whether to dismiss a claim based on a forum selection clause under the modified doctrine of *forum non conveniens*." *Rabinowitz v. Kelman*, 75 F.4th 73, 81 (2d Cir. 2023); *see also Fasano v. Yu Yu*, 921 F.3d 333, 335–36 (2d Cir. 2019). At the first three steps, "the court asks (1) 'whether the clause was reasonably communicated to the party resisting enforcement,' (2) 'whether the clause is mandatory,' that is, whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so, and (3) 'whether the claims and parties involved in the suit are subject to the forum selection clause.'" *Rabinowitz*, 75 F.4th at 81 (emphasis in original) (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d

Cir. 2014)).  If the answer to all three questions is "yes," the clause is presumptively

enforceable.  *Id.*  At the fourth step, "the court asks (4) whether the resisting party

has rebutted that presumption by 'making a sufficiently strong showing that

enforcement would be unreasonable or unjust, or that the clause was invalid for

such reasons as fraud or overreaching.'"  *Id.* (quoting *Martinez*, 740 F.3d at 217).

## DISCUSSION

### A.    Subject Matter Jurisdiction

At the outset, Pirs Capital asserts that the Court "lacks jurisdiction over

[this] proceeding" because the Merchant Agreement's forum selection clause

requires this action to brought in New York County Supreme Court.  (Pet. Br. at

2–3; *see also* Dkt. No. 10).  "But forum selection clauses, however interpreted, have

no bearing on a court's subject matter jurisdiction."  *Rabinowitz v. Kelman*, 75 F.4th

73, 79 (2d Cir. 2023); *see also Karl Koch Erecting*, 838 F.2d at 658 ("A forum

selection clause, although it can have jurisdictional consequences, does not oust a

district court of subject-matter jurisdiction.").  Thus, when a district court remands

a removed action based on a forum selection clause, it does so not because it lacks

jurisdiction, but because, exercising its jurisdiction, it determines that the forum

selection clause should be enforced.  *See Karl Koch Erecting*, 838 F.2d at 658;

*Rabinowitz*, 75 F.4th at 79.

Here, Chen adequately establishes this Court's subject-matter jurisdiction on

the basis of diversity of citizenship between the parties.  28 U.S.C. § 1332(a); *id.*

§ 1441(a).  The amount in controversy—*i.e.*, the arbitration award of $212,506 that

Pirs Capital seeks to confirm (Dkt. No. 1 at Ex. 1 ¶ 17)—exceeds $75,000.  *Kleinman*

*v. Ozdemir*, No. 13 Civ. 7530 (JPO), 2014 WL 1327979, at *2 (S.D.N.Y. Apr. 2, 2014)

("When a petitioner seeks confirmation or vacatur of an [arbitration] award . . . the

amount in controversy is the value of the award itself to the petitioner."). Likewise,

Chen represents that he is a citizen of California and Pirs Capital, a limited liability

company, and its members are citizens of Florida. (Dkt. No. 7). Pirs Capital does

not dispute those representations.

Thus, "[t]he issue to be decided, properly framed, 'is whether [the] court

should . . . exercise[] its jurisdiction to do more than give effect to the legitimate

expectations of the parties, manifested in their freely negotiated agreement, by

specifically enforcing the forum clause.'" *Rabinowitz*, 75 F.4th at 79 (quoting *M/S

Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)). Construing Pirs Capital's

motion as a motion to remand based on the parties' forum selection clause, the

Court proceeds to an examination of that issue.[4]

## B. Enforceability of the Forum Selection Clauses

### 1. Presumption of Enforceability Under Steps One Through Three

Cheng does not meaningfully dispute the first three prongs of the Second

Circuit's four-part inquiry and the Court finds each is satisfied here.

*First*, the forum selection clause[5] was reasonably communicated to Chen.

The provisions are plainly set forth in Sections 4.5 and 4.12(j) of the Merchant

---

[4] Where a court determines that a forum selection clause precludes removal to federal court, it is
appropriate to grant the plaintiff's motion to remand to state court. *Yakin,* 566 F.3d at 74; *Karl Koch
Erecting*, 838 F.2d at 660; *Law Offices of Aleksandr Vakarev*, 2022 WL 3030444, at *2.

[5] While the various forum selection provisions in the Merchant Agreement and Guaranty arguably
are all applicable, the provision most directly relevant to the instant dispute is Section 4.12(j), which

Agreement, which Chen executed on behalf of Cenports and individually as owner of Cenports.  (*See* Dkt. No. 13-1 §§ 4.5, 4.12; *id.* at 9).  Section 4.5, in particular, bears the bolded and underlined heading: "Binding Effect: Governing Law, Venue, and Jurisdiction."  (*Id.* § 4.5).  The substance of that provision is set forth again, nearly verbatim, in the Guaranty, which Chen separately executed again on behalf of Cenports and individually as its owner.  (*Id.* at 11–12).  In signing the Guaranty, Chen expressly acknowledged that he "understands the seriousness of the provisions of this Agreement" and "has had a full opportunity to consult with legal counsel."  (*Id.* at 12) (bolded in original).  *See, e.g.*, *Speedfit LLC*, 642 F. Supp. 3d at 444 ("A forum selection clause may be deemed reasonably communicated where the clause at issue appears as a standard section in the main body of an agreement signed by the parties and is phrased in both clear and unambiguous language.") (cleaned up).

*Second*, the forum selection clause is mandatory.  "A mandatory forum selection clause grants exclusive jurisdiction to a selected forum; on the other hand, a permissive forum selection clause only reflects the contracting parties' consent to resolve disputes in a certain forum, but does not *require* that disputes be resolved in that forum."  *Reed Int'l, Inc. v. Afghanistan Int'l Bank*, 657 F. Supp. 3d 287, 307 (S.D.N.Y. 2023) (emphasis in original).  The forum selection provisions in Section 4.5 of the Merchant Agreement and the Guaranty unequivocally mandate that "[a]ny suit, action, or proceeding" arising under the agreements or regarding "the

---

expressly deals with a proceeding to confirm an arbitration award.  For ease of reference, the Court refers to a singular "forum selection clause" in its analysis.

interpretation performance or breach" of the agreements, "*shall*, if [Pirs Capital] so elects, be instituted" in the New York County Supreme Court. (*Id.* § 4.5; *id.* at 11 (emphasis added)). And Section 4.12(j) of the Merchant Agreement mandates that a "proceeding to confirm [an] award rendered by the Arbitrator(s) *shall* be brought" in the state court. (*Id.* § 4.12(j) (emphasis added)). *See, e.g.*, *Kraljevich v. Courser Athletics, Inc.*, No. 21 Civ. 9168 (PKC), 2022 WL 3597760, at *7 (S.D.N.Y. Aug. 23, 2022) (clause stating suits "shall be brought" in Massachusetts was mandatory; "[t]he word 'shall' is routinely interpreted as creating a mandatory forum selection clause").[6]

*Third*, the forum selection clause plainly applies to the claims and parties in this case. In particular, Section 4.12(j) of the Merchant Agreement specifically governs a "proceeding to confirm" an arbitration award, which is precisely what Pirs Capital seeks to do in this action. (Dkt. No. 13-1 § 4.12(j); Verified Petition, Dkt. No. 13-3 ¶ 17). The arbitration award was issued against Chen, who executed both the Merchant Agreement and the Guaranty and who does not dispute that he was properly named as a respondent in the arbitration. *See Zeevi Holdings Ltd. v. Republic of Bulgaria*, No. 09 Civ. 8856 (RJS), 2011 WL 1345155, at *4-6 (S.D.N.Y. Apr. 5, 2011) (enforcing forum selection clause requiring execution of arbitration award to be conducted in Bulgaria), *aff'd*, 494 F. App'x 110 (2d Cir. 2012).

---

[6] Of course, Chen did not bring the confirmation proceeding, which was filed by Pirs Capital. Chen removed the proceeding to this Court after it was filed in state court. But the Second Circuit has definitively ruled that a forum selection clause requiring that an action be "commenced" in state court precludes a defendant from removing it to federal court. *Karl Koch Erecting*, 838 F.2d at 659.

The Court therefore finds the parties' choice of a New York state court forum to be "presumptively enforceable," *Martinez*, 740 F.3d at 217, and turns to the fourth step in the enforceability analysis.

### 2. Chen's Arguments Against Enforcement

To overcome the presumption of enforceability under the fourth step, Chen must make a "sufficiently strong showing" that: (1) the incorporation of the forum selection clause was "the result of fraud or overreaching"; (2) "the law to be applied in the selected forum is fundamentally unfair"; (3) "enforcement contravenes a strong public policy of the forum in which suit is brought"; or (4) "trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Martinez*, 740 F.3d at 217, 227–28.

Chen's sole challenge to enforcement of the forum selection clause is rooted in his assertion that the Merchant Agreement is a usurious loan in violation of New York law. (Resp. Br. at 1). There are two distinct doctrinal components to Chen's challenge. *First*, Chen broadly asserts the Court must, as an initial matter, "assess the substantive validity" of his "core" usury defense because, if he is correct that the Merchant Agreement is usurious, if would invalidate the parties' entire agreement, including the forum selection clause. (*Id.* at 1–3, 5–6). *Second*, Chen argues that, in light of his allegations that the Merchant Agreement is usurious, it would be unreasonable, unjust, and, most significantly, "contravene the fundamental public policy of New York" to enforce the forum selection clause before he has had an opportunity to prove his usury defense in this Court. (*Id.* at 7–8). The Court addresses these two arguments.

### a. Alleged Illegality of the Merchant Agreement

It is true that, under New York law, when a contract violates the state's criminal or civil prohibitions on usury, the entire contract is "void *ab initio*." *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 325, 333, 157 N.Y.S.3d 800, 179 N.E.3d 612 (2021) (consequence of usurious loan is "complete invalidity of the loan instrument"). But that does not mean Chen's mere assertion that the Merchant Agreement is usurious, and thus void under New York law, is a valid basis for him to escape the forum selection clause.

The Second Circuit recently considered this very issue in *DarkPulse, Inc. v. FirstFire Global Opportunities Fund, LLC*, No. 23-78, 2024 WL 1326964 (2d Cir. Mar. 28, 2024), a case decided after the briefing on the instant motion had concluded. The plaintiff in *DarkPulse* brought an action in this court despite a clause in the contract at issue designating Delaware courts as the exclusive forum for the parties' dispute. *Id.* at *1. The *DarkPulse* plaintiff argued, like Chen does here, that the forum selection clause was unenforceable because the contract "facilitated a criminally usurious loan under New York law and was therefore void *ab initio*." *Id.* at *2. The Second Circuit, however, rejected that argument, explaining that it did not establish a basis for overcoming the presumptive enforceability of the forum selection clause and concluding, accordingly, that "the Delaware forum-selection clause was enforceable." *Id.*

Although *DarkPulse* was a summary order and, as such, is not binding precedent, numerous other courts have similarly rejected attempts to avoid

enforcement of forum selection clauses based on allegations that the underlying contract was usurious. *See, e.g., Gafner v. Oasis Legal Finance, LLC*, No. 23 Civ. 581 (MEF) (AME), 2024 WL 1190741 (D.N.J. Mar. 19, 2024); *Spread Your Wings, LLC v. AMZ Grp. LLC*, No. 20-cv-3336-VKD, 2020 WL 5749085, at *4 (N.D. Cal. Sept. 25, 2020); *Vayn v. Schaen*, Civ. No. 16-461, 2016 WL 4211838, at *3 (D.N.J. Aug. 9, 2016); *Maldonado v. Lawcash, I LLC*, No. 651321/2014, 2015 WL 458223, at *1 (Sup. Ct. N.Y. Cnty. Jan. 23, 2015) (rejecting plaintiffs' argument that forum selection clause "should be ignored because, in their view, the whole contract ought [to] be considered void *ab initio* as usurious").  The same result has been reached in the related context where a party seeks to avoid enforcement of an arbitration clause.  *See, e.g.*, *Inventory Generation Inc. v. Proventure Cap. Funding LLC*, No. 22 Civ. 10529 (PAE), 2023 WL 2609344, at *3, *6–7 (S.D.N.Y. Mar. 23, 2023) (compelling arbitration before Rapid Ruling pursuant to arbitration clause in merchant cash agreement, despite plaintiff's contention that agreement was usurious and thus "void," and finding plaintiff's usury challenge to be "properly evaluated in the first instance by an arbitrator").

These decisions are in keeping with a more general rule: "To challenge successfully a forum selection clause as void on the basis of illegality, the challenge must be directed against the forum selection clause itself, as opposed to the contract as a whole." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Seneca Family of Agencies*, 255 F. Supp. 3d 480, 488 (S.D.N.Y. 2017); *see also Brightman v. InMode Ltd.*, No. 22 Civ. 5861 (MKV), 2023 WL 5209290, at *3 (S.D.N.Y. Aug. 14, 2023) ("It

is well settled that fraud in the inducement of an agreement, as distinct from fraud in the inducement of the forum selection clause specifically, is insufficient to defeat the forum selection clause") (cleaned up), *aff'd*, No. 23-1221, 2024 WL 1598118 (2d Cir. Apr. 12, 2024); *Oquendo v. CCC Terek*, 111 F. Supp. 3d 389, 407 (S.D.N.Y. 2015) ("Allegations of duress with respect to the contract as a whole—or even to portions of it other than the forum-selection clause—are insufficient . . . Rather, the claims of duress must be aimed straight at the forum-selection clause in order to succeed") (citation omitted); *Dollar Phone Access, Inc. v. AT&T Inc.*, No. 14 Civ. 3240 (SLT) (LB), 2015 WL 430286, at *8 (E.D.N.Y. Feb. 2, 2015) ("even assuming the rates in the [agreement at issue] are void for conflicting with federal law (which goes to the merits of plaintiff's case), this would not affect the enforceability of the forum selection clause which simply determines where the parties must litigate this dispute") (cleaned up); *Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 379–80 (S.D.N.Y. 2001) (finding it "most appropriate to address the validity of the forum-selection clauses separately from the defenses to the [contracts] on the merits," contrary to defendant's argument that "a forum-selection clause cannot be valid if it is a part of a document that is void in its entirety").

"This rule is based on the principle that a 'forum-selection clause is understood not merely as a contract provision, but as a distinct contract in and of itself—that is, an agreement between the parties to settle disputes in a particular forum—that is separate from the obligations the parties owe to each other under the remainder of the contract.'" *Miller-Rich v. Altum Pharm. Inc.*, No. 22 Civ. 3473

(JLR), 2024 WL 1638637, at *8 (S.D.N.Y. Apr. 16, 2024) (quoting *Marra v. Papandreou*, 216 F.3d 1119, 1123 (D.C. Cir. 2000)); *see also Dollar Phone Access*, 2015 WL 430286, at *8 (same); *Rucker v. Oasis Legal Fin., L.L.C.*, 632 F.3d 1231, 1237–38 (11th Cir. 2011) (rejecting argument that "the forum selection clause cannot be given effect because it is included within a contract that is void as a matter of law" and explaining that "[a] forum selection clause is viewed as a separate contract that is severable from the agreement in which it is contained").[7]

Chen mounts no challenge to the forum selection clause in particular, and cites no authority supporting his position that his challenge to the validity of the Merchant Agreement as a whole renders the forum selection clause unenforceable. Rather, Chen relies on Judge Rakoff's decision in *Haymount Urgent Care PC v. GoFund Advance*, 690 F. Supp. 3d 167 (S.D.N.Y. 2023), which did not concern the enforcement of a forum selection clause. (*See* Resp. Br. at 5.) In *Haymount*, Judge Rakoff weighed whether to rely on a New York choice-of-law provision contained in merchant cash agreements that the plaintiffs challenged as void under New York's usury laws. 690 F. Supp. 3d at 173–75. The plaintiffs "contend[ed] that the choice-of-law provision should apply even if New York law would invalidate the contracts." *Id.* at 175. Reasoning that plaintiffs could not rely on a choice-of-law provision in a contract they simultaneously argued was void, Judge Rakoff engaged in an

---

[7] Indeed, although not necessary to the Court's analysis, the Merchant Agreement contains a severability clause expressly stating that if any provision of the agreement is found to be invalid or unenforceable, that does not affect the validity or enforceability of any other provision. (Dkt. No. 13-1 § 4.8). *See Dollar Phone Access*, 2015 WL 430286, at *8 (relying, in addition to the "general severability of a forum selection clause," on "an explicit severability provision" in the parties' contract).

independent choice-of-law analysis, ultimately determining North Carolina law applied, which foreclosed the plaintiffs' usury argument. *Id*. at 175–76. The court thus granted summary judgment in favor of defendants on plaintiffs' usury-based claim. *Id*. at 176.

*Haymount* is easily distinguishable from the circumstances here. Judge Rakoff did not, in fact, engage in a substantive analysis of whether the agreements were usurious before deciding not to apply their choice-of-law provisions—he simply assumed, *arguendo*, the agreements were usurious under New York law and then found it did not matter because plaintiffs lost anyway. More importantly, *Haymount* did not decide that a *forum selection clause* was unenforceable due to an allegation of usury. Indeed, in an earlier ruling in the same case, Judge Rakoff made clear why this distinction matters and why forum provisions cannot be so easily defeated. *See Haymount Urgent Care PC v. GoFund Advance*, 635 F. Supp. 3d 238, 245 (S.D.N.Y. 2022).

In that ruling, Judge Rakoff denied defendants' motion to strike plaintiffs' class action allegations based on a class action waiver in merchant cash agreements, reasoning that, if plaintiffs were correct that the agreements were usurious, the class action waivers would be void. *Id*. at 241–45. In so doing, Judge Rakoff expressly noted that "the class action waiver provisions at issue here do not require this case to proceed in a different forum" and made clear that the result would be different if a forum provision such as an arbitration clause were involved. *Id*. at 245. He explained: "Reserving for the arbitrator the initial determination as

to whether an allegedly void agreement is in fact void makes sense, because the whole point of the arbitration provision is to decide in which forum claims should be made and arguments decided. Allowing such a claim to proceed in court would therefore frustrate the arbitration agreement." *Id*. (citation omitted).[8]

So too here, the whole point of Section 4.12(j) of the Merchant Agreement is to decide in which forum a proceeding to confirm an arbitration award between the parties, including Chen's defenses to confirmation, should be adjudicated. Allowing Chen to move the confirmation proceeding to this Court would frustrate the parties' express agreement to have these issues decided in New York state court and would be contrary to well-established law. In short, Chen's argument "puts the cart (whether the contract is valid) before the horse (where that question will be answered)." *Gafner*, 2024 WL 1190741, at *2. Accordingly, it must be rejected.

### b. Fundamentally Unfair or Contrary to Public Policy

Chen's argument under the traditional criteria for rebutting the presumption of enforceability fares no better. As an initial matter, Chen does not argue that the forum selection clause was the product of fraud or overreaching. Nor does he contend that it would be more difficult or inconvenient for him to litigate the

---

[8] The court in *Moss v. First Premier Bank*, No. 13 Civ. 05438 (ERK) (AYS), 2020 WL 5231320 (E.D.N.Y. Sept. 2, 2020), found a class action waiver in a loan agreement invalid because the loan agreement was "usurious on its face" and, hence, "void *ab initio*." *Id*. at *3–4 (citation omitted). The court further stated that "when a contract is void *ab initio*, that invalidity extends even to procedural matters in the contract like a forum selection clause." *Id*. at *4 (citing *DeSola Grp., Inc. v. Coors Brewing Co.*, 199 A.D.2d 141, 141–42 (1st Dep't 1993), and *Signature Fin. LLC v. Neighbors Glob. Holdings, LLC*, 281 F. Supp. 3d 438, 446 (S.D.N.Y. 2017)). But *Moss* itself did not address the enforceability of a forum selection clause, and neither *DeSola* nor *Signature* involved a challenge to a forum selection clause based on a claim of usury. *See DeSola*, 199 A.D.2d at 141–42 (applying exception to enforceability of forum selection clause where entire agreement is "permeated by fraud"); *Signature Fin.*, 281 F. Supp. 3d at 446 (noting, and declining to apply, same exception).

confirmability of the Award a few yards away in New York County Supreme Court instead of in this Court.

Rather, Chen argues it would be "fundamentally unfair" and "contravene New York's clearly stated public policy against usury rates" to enforce the forum selection clause and remand this action to state court. (Resp. Br. at 7). In particular, Chen argues that simply by "invoking" his usury argument he has satisfied his "burden" under the fourth step to rebut the presumption of enforceability. (*Id.*). Further, Chen contends that because New York state courts have generally failed to engage in the same "level of in-depth scrutiny" as federal courts when analyzing whether an agreement violates New York's usury laws, he requires a federal forum to receive a fair hearing on his usury defense. (*Id.* at 2, 7–8).

While the Court does not disagree that New York has "a strong public policy against usurious contracts," (Resp. Br. at 7 (quoting *Samsun Lending LLC v. Greenfield Mgmt. LLC*, 80 Misc. 3d 1023, 1026, 196 N.Y.S.3d 850, 853 (Sup. Ct. Ontario Cnty. 2023))), that fact does not rebut the presumption of enforceability. The Second Circuit's decision in *DarkPulse* again shows why. Addressing the factors for rebutting the presumption of enforceability, the court first noted that the plaintiff did not claim the Delaware forum selection clause was procured through fraud or overreach, or that litigation in Delaware would be inconvenient. *See DarkPulse,* 2024 WL 1326964 at *2. Emphasizing that the analysis under the fourth step is "governed by *federal* common law," the court went on to reason that

"there is no federal prohibition on usury" and the plaintiff thus failed to show "why, as a matter of federal common law, the application of Delaware's laws would be fundamentally unfair." *Id.* (emphasis in original). Further, merely by alleging that the underlying agreement was usurious, DarkPulse had not "demonstrated that enforcement of the forum-selection clause would contravene a sufficiently strong public policy of New York state." *Id.*

Likewise here, Chen has failed to make a "'sufficiently strong showing,'" *id.* at *1 (quoting *Martinez*, 740 F.3d at 217), that enforcement of the forum selection clause would contravene New York public policy. Chen does not contend that the Merchant Agreement is usurious on its face; he claims the agreement is not what it purports to be—a purchase and sale of future receivables—but is instead a "disguised loan," which will be revealed after a "highly factual" analysis requiring "careful consideration of all the circumstances." (Resp. Br. at 2; Award ¶ 11(a)). Moreover, unlike in *DarkPulse*, this is an action to confirm an arbitration award in Pirs Capital's favor, which includes an express finding from the parties' chosen arbitrator, following an evidentiary hearing, that the Merchant Agreement is *not* a usurious loan in violation of New York law. (Award ¶ 12(a)–(j)). Under these circumstances, Chen has not come close to making the requisite strong showing. *See Vayn*, 2016 WL 4211838, at *3 (enforcing forum selection clause where "Defendant is unable to show definitively at this stage" that enforcement would violate New York's public policy against usury); *Maldonado*, 2015 WL 458223, at *1 ("Whether the terms of the agreement constitute 'usury' may or may not be an open

legal question," but "there is no reason to ignore plaintiffs' express commitment to present any dispute under the agreements in a Kings County venue").

Chen's "public policy" argument is also anomalous. In substance, Chen asserts that because the State of New York has such a strong public policy against usury, he should not be required to litigate this issue of New York law in the courts of the State of New York. That position makes no sense. Chen "cannot credibly claim that the application of New York law by a New York court would violate New York's public policy." *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 95 (S.D.N.Y. 2021) (citation omitted); *see also Adar Bays, LLC v. GeneSYS ID, Inc.*, 962 F.3d 86, 94 (2d Cir. 2020) (certifying questions of New York usury law for resolution by New York's highest state court); *Neubeck v. All American Ins. Co.*, 651 F. Supp. 3d 646, 656 n.8 (W.D.N.Y. 2023) (granting motion to remand and noting that "the New York state court is better suited to address" issues of New York law involved in the case).

Although Chen asserts that the federal court in Manhattan would be a more hospitable forum for his usury arguments than the New York state court in Manhattan, the Court need not assess the accuracy of that assertion. (*See* Resp. Br. at 2–4). It is immaterial. Chen must show that it would be fundamentally unfair or contravene New York public policy for him to litigate in the parties' chosen forum, and he cannot possibly make that showing when the parties' chosen forum is *in New York*.

Further, Chen's argument overlooks the fact that "New York 'has a strong public policy of *enforcing* forum selection clauses so that parties are able to rely on

the terms of the contracts they make.'" *Bank v. Laptop & Desktop Repair LLC*, 206 F. Supp. 3d 772, 781 (E.D.N.Y. 2016) (quoting *Brodsky v. Match.com LLC*, No. 09 Civ. 5328 (NRB), 2009 WL 3490277, at *4 (S.D.N.Y. Oct. 28, 2009)) (emphasis in original); *accord, e.g.*, *Vandermast v. Wall & Assocs., Inc.*, No. 20-3831, 2022 WL 164307, at *2 (2d Cir. Jan. 19, 2022) (summary order); *du Quenoy v. Am. Univ. of Beirut*, No. 18 Civ. 6962 (ER), 2019 WL 4735371, at *7 (S.D.N.Y. Sept. 27, 2019), *aff'd*, 828 F. App'x 769 (2d Cir. 2020).  As Pirs Capital notes (Pet. Br. at 3), and especially relevant here, New York also has a specific public policy, reflected in statutory law, favoring enforcement of such clauses in connection with proceedings to confirm arbitration awards.  *See* N.Y. C.P.L.R. § 7502(a)(i) (proceeding to confirm arbitration award "shall be brought in the court and county specified in the agreement").

Finally, Chen's alternative request for "a full and formal briefing schedule" on the usury issue, coupled with "limited expedited discovery" on that issue, is without merit.  (Resp. Br. at 8).  In support of this argument, Chen cites cases (1) authorizing limited discovery on issues of subject-matter or personal jurisdiction, which are irrelevant here; and (2) denying motions to dismiss usury-related claims and allowing the parties to proceed to discovery, which are equally irrelevant.  (*Id.* at 8–9).  Chen cites no cases allowing discovery on the enforceability of a forum selection clause.  To allow such briefing and discovery here would itself deprive Pirs Capital of the benefit of the presumptively valid forum selection clause in the

parties' freely negotiated agreement.[9]  For the reasons described above, Chen has presented no reason to rebut that presumption.

Accordingly, Chen has not met his burden of demonstrating that the forum selection clause is unenforceable.  Therefore, the forum selection clause constitutes a valid waiver of whatever right Chen otherwise would have had to remove this case based on the parties' diverse citizenship.  *See, e.g.*, *Yakin*, 566 F.3d at 76; *Karl Koch Erecting*, 838 F.2d at 659.

### C.    Collateral Estoppel

As noted, the focus of Pirs Capital's Reply is that Chen should be collaterally estopped from making his substantive argument that the Merchant Agreement constitutes a usurious loan under New York law.  (Reply at 2–3).  Pirs Capital argues that Chen should not have the opportunity to "re-litigate matters that were already the subject of the arbitration proceeding."  (*Id.* at 2).  This argument is mooted by the Court's determination above that the forum selection clause is enforceable despite Chen's claim that the Merchant Agreement is usurious.

Pirs Capital's collateral estoppel argument is without merit in any event. "'Under New York law, an arbitral award has preclusive effect only when it is 'final.'"  *Emerson Elec. Co. v. Holmes*, No. 16 Civ. 1390 (PKC) (SIL), 2020 WL

---

[9] Separately, Chen's application for discovery overlooks the fact that this is an action to confirm an arbitration award.  As such, discovery is available only in "limited circumstances," otherwise the "promise of a prompt and inexpensive" arbitration proceeding "would be vitiated."  *Tradiverse Corp. v. Luzar Trading S.A.*, No. 20 Civ. 3387 (LTS) (GWG), 2020 WL 8838055, at *1 (S.D.N.Y. June 23, 2020); *see also Bus. Credit & Cap. II LLC v. Neuronexus, Inc.*, No. 18 Civ. 3374 (ALC), 2019 WL 1426609, at *6 (S.D.N.Y. Mar. 29, 2019) (declining to address respondent's "intricate calculations" purporting to show an agreement was a usurious loan in support of its motion to vacate an arbitration award, as it would "force the Court to impermissibly reassess the evidentiary record").

4592808, at *16 (E.D.N.Y. Aug. 11, 2020) (quoting *Glob. Gold Mining, LLC v. Ayvazian*, 612 F. App'x 11, 13 (2d Cir. 2015) (summary order)). Here, the Arbitration Award against Chen is not final, as it remains unconfirmed. *See Glob. Gold Mining*, 612 F. App'x at 13 (where district court had not yet decided motion to vacate arbitration award, award "had not yet become final and, thus, had no preclusive effect"); *Fuller v. Interview, Inc.*, No. 07 Civ. 5728 (RJS), 2014 WL 2601376, at *6 (S.D.N.Y. May 14, 2014) ("Since the arbitral award here is unconfirmed and the subject of a pending motion to vacate, it is not yet entitled to preclusive effect.").

*    *    *

Accordingly, the Court concludes that this action should be remanded to the New York County Supreme Court in accordance with the parties' forum selection clause. In reaching this conclusion, the Court does not intimate any view as to the merits of Chen's usury argument or whether that argument would constitute a basis for overturning the Award given the limited judicial review typically afforded arbitration awards. Whatever the strength or weakness of those arguments, Chen will have to present them to the New York County Supreme Court.

## CONCLUSION

For the reasons set forth above, the undersigned respectfully recommends that Pirs Capital's motion to remand be **GRANTED**.

DATED:     New York, New York
           August 8, 2024

_____
The Honorable Gary Stein
United States Magistrate Judge

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. Section 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen days, inclusive of weekends and holidays, from the date of this Report and Recommendation to file written objections thereto.  *See also* Fed. R. Civ. 6(a), (b), and (d).  Any such objections shall be filed with the Clerk of Court.  Any request for an extension of time to file objections must be directed to Judge Torres. A failure to file timely objections will preclude appellate review.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner v. Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).